J. C. TAYLOR, Warden, United States Penitentiary, Leavenworth, Kansas, Appellant,

v.

David Lee SIMPSON, Appellee.

No. 6675.

United States Court of Appeals
Tenth Circuit.

June 23, 1961.

Howard A. Glickstein, Atty., Dept of Justice, Washington, D. C. (Burke Marshall, Asst. Atty. Gen., Newell A. George, U. S. Atty., Kansas City, Kan., and Harold H. Greene, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

No appearance for appellee.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an appeal from an order entered in a habeas corpus proceeding discharging Simpson from the custody of Taylor, Warden of the United States Penitentiary at Leavenworth, Kansas.

On December 5, 1947, Simpson was convicted upon a plea of guilty to an information charging him with a violation of 18 U.S.C. § 73, 1940 Ed.,* and sentenced to the custody of the Attorney General for a period of six years. He commenced the service of his sentence on April 18, 1949. On March 27, 1953, he was conditionally released, pursuant to 18 U.S. C.A. § 4163, with 751 days of his maximum sentence not yet served. 18 U.S. C.A. § 4164 provides that a prisoner released under § 4163, supra, "shall upon release be treated as if released on parole,

and shall be subject to all provisions of law relating to the parole of United States prisoners until the expiration of the maximum term or terms for which he was sentenced." The maximum term of such sentence expired April 17, 1955. The Chief Probation Officer for the Western District of Missouri on June 7, 1954, reported to the Board of Parole that Simpson had left the Western District of Missouri without permission; that he had been advised by the Jacksonville, Florida Probation Officer by letter dated May 1, 1954, that Simpson was leaving that week to return to Kansas City, but that Simpson had not reported to the Kansas City Office and that his present whereabouts was unknown.

The Board of Parole having thus received reliable information from such Chief Probation Officer that Simpson had violated the terms of his conditional release by departing without permission from the territorial limits within which he was to remain during the period of his conditional release, on June 11, 1954, issued its warrant for the retaking of Simpson as a conditional release violator.[1]

The warrant was forwarded to the United States Marshal of Kansas City, Missouri, accompanied by a letter containing the following instructions to the Marshal:

"1. If the prisoner is facing a local charge, or is in jail or on bond, withhold execution of the warrant until disposition is made or until you receive further instructions from this office.

"2. If the prisoner is sentenced or placed on probation on a new federal charge, return this warrant unexecuted. Under any other circumstances the warrant should be executed and this office notified promptly.

"3. If the prisoner is now a fugitive, but later located, the same procedure outlined above should be applied."

* Now 18 U.S.C.A. § 495.

1. Whenever hereinafter we use the phrase "the warrant," the reference is to the warrant of June 11, 1954.

The United States Marshal for the Western District of Missouri was unable to apprehend Simpson, and the Parole Board, having learned that Simpson was in the custody of the State of Colorado, on May 26, 1955, directed such Marshal to forward the warrant which had been delivered to him to the United States Marshal for the District of Colorado at Denver, Colorado. On the same date, the Parole Board notified the Colorado Marshal that Simpson was a conditional release violator and requested that he be taken into custody and that the warrant was being forwarded from Kansas City, Missouri. The Colorado Marshal immediately notified the Warden of the County Jail for the City and County of Denver, where Simpson was then confined, of Simpson's status as a conditional release violator and requested that a detainer for him be placed on file. On July 15, 1955, the Parole Board was advised that on June 14, 1955, Simpson had been sentenced by a Colorado State Court to confinement in the Colorado State Penitentiary for a term of from six to ten years for the offense of conspiracy to commit a confidence game. On July 27, 1955, the Colorado Marshal notified the Board of Parole that the detainer lodged with the Denver County Jail had been forwarded to the Colorado State Penitentiary, where Simpson was received on July 22, 1955.

On May 7, 1956, the Colorado Marshal returned to the Parole Board the unexecuted warrant and advised the Parole Board that on May 4, 1956, Simpson had been sentenced by the United States Court for the District of Colorado upon a conviction of the offense of forgery, to imprisonment for a term of five years, to run concurrently with the sentence he was then serving in the Colorado State Penitentiary. On June 29, 1956, the Parole Board returned the warrant to the Colorado Marshal, with a letter stating he would be advised later as to its execution. On August 21, 1958, the Parole Board notified the Colorado Marshal that Simpson was scheduled to be released from the Colorado State Penitentiary on December 7, 1958, prior to the completion

of the five-year Federal sentence, and further advised the Colorado Marshal that if this occurred and Simpson was taken into custody by Federal authorities to complete the service of the five-year sentence, the Colorado Marshal should return the warrant unexecuted to the Parole Board. Simpson was in fact released from the Colorado State Penitentiary on November 29, 1958, and was transferred to the United States Penitentiary at Leavenworth, Kansas, to complete the service of his five-year sentence. On December 3, 1958, the Colorado Marshal returned the unexecuted warrant to the Parole Board. On December 9, 1958, the Parole Board forwarded the warrant to the Warden of the United States Penitentiary at Leavenworth, Kansas, with instructions to hold it as a detainer and upon Simpson's release from the five-year sentence, to take him into custody on the warrant, for a hearing on the charge of violating his parole and further instructed the Warden to return the warrant when served, with his return of service thereof.

On October 3, 1960, Simpson completed the service of his five-year sentence and upon his release was taken into custody under the warrant and thereafter was ordered by the Parole Board to serve the unexpired portion of the six-year sentence, which amounted to a period of 751 days.

The trial court held that since the warrant was not delivered to the officer who served it and was not executed within the maximum term for which Simpson had been sentenced, it was not issued within such term and was therefore unauthorized and discharged Simpson from custody.

The Act of June 25, 1910, 36 Stat. 820, 18 U.S.C.A. § 717 provided:

"If the warden of the prison or penitentiary from which said prisoner was paroled or said board of parole or any member thereof shall have reliable information that the prisoner has violated his parole, then said warden, at any time within the term or terms of the prisoner's sentence, may issue his warrant *to any officer*

hereinafter authorized to execute the same, for the retaking of such prisoner." (Italics ours.)

That section was superseded by § 4205 of the Act of June 25, 1948, 62 Stat. 854, 18 U.S.C.A. § 4205, which reads as follows:

"A warrant for the retaking of any United States prisoner who has violated his parole, may be issued only by the Board of Parole or a member thereof and within the maximum term or terms for which he was sentenced. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the prisoner was on parole shall not diminish the time he was sentenced to serve."

It will be observed that under the terms of the earlier Act (§ 717, supra) "the warden" "may issue his warrant to any officer" "at any time within the term or terms of the prisoner's sentence," while in the later Act (§ 4205, supra) the phrase "to any officer" has been omitted.

In Neal v. Hunter, 10 Cir., 172 F.2d 660, 662, the court held that when a parolee is apprehended, sentenced and confined for another offense, while on parole, the running of his original sentence is interrupted and suspended and the jurisdiction of the Parole Board over him with respect to such original sentence is also suspended, while he is so confined. Hence, while Simpson was in custody of the authorities of the State of Colorado, first on a State charge, and later on a State criminal sentence, he could not have been taken into custody on the parole violator's warrant, absent consent by Colorado that he be released to the Parole Board. Colorado had not so consented and Simpson had no right to have such consent given. Likewise, while he was in custody of Federal authorities under the five-year Federal sentence, Simpson could not have been taken into custody under the Federal parole violator's warrant, unless the Attorney General had consented that he be released from the five-year sentence before it had been completed, in order that he be taken into custody under the parole violator's warrant. The Attorney General had not given such consent and Simpson had no right to have such consent given.

In Adams v. Hudspeth, 10 Cir., 121 F.2d 270, the facts were these:

On February 24, 1936, a member of the United States Parole Board issued a parole violator's warrant for the arrest of a parolee. He was indicted, taken into custody, tried and convicted for another Federal offense and on July 6, 1936, and before such warrant had been served, he was sentenced to imprisonment for such other offense for a term of six years. On his release from such six-year term of imprisonment, he was taken into custody under the parole violator's warrant. The court held that notwithstanding the service of the warrant on the parolee was subsequent to the expiration of the maximum term under which he was paroled, the warrant had been issued within such term.[2]

We are of the opinion that under the present statute the warrant is issued "within the maximum term or terms" when before the expiration of such term or terms the warrant has been signed by a member of the Parole Board and the Board has commenced appropriate action to have the warrant executed, although the warrant is not actually delivered to the officer who executes it and is not executed before the expiration of such maximum term or terms. If the law were otherwise, a prisoner who had violated his parole, who had committed another offense, who had been convicted and sentenced for such other offense and confined under such sentence and who for that reason was not amenable to being

---

2. See also Neal v. Hunter, 10 Cir., 172 F. 2d 660; Nave v. Bell, 6 Cir., 180 F.2d 198; United States ex rel. Jacobs v. Barc, 6 Cir., 141 F.2d 480, certiorari denied 322 U.S. 751, 64 S.Ct. 1262, 88 L. Ed. 1581; Zerbst v. Kidwell, 304 U.S. 359, 363, 58 S.Ct. 872, 82 L.Ed. 1399.

702

arrested and taken into custody on a parole violator's warrant within such maximum term, by his own wrongdoing would avoid the service of the remaining portion of the sentence.

The order is therefore reversed and the cause remanded, with instructions to vacate such order, remand Simpson to the custody of the Warden and issue appropriate process to take Simpson into custody and deliver him to the Warden.